Voto particular de conformidad emitido por el
Juez Aso-ciado Señor Martínez Torres,
al cual se une el Juez Pre-sidente Señor Hernández Denton.
En el voto de conformidad que emití en ASPRO et al., Ex parte I, 189 DPR 769, 774 (2013), me expresé a favor de la nueva política pública de este Foro que busca garantizar la transparencia de los procedimientos judiciales. Para alcanzar ese propósito, esta Curia enmendó el Canon 15 de Ética Judicial en In re C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424 (2013). A tono con la nueva normativa, se creó en In re C.15; Regl. Uso Cámaras Proc. Jud., id., un "Programa experimental para el uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan”. Asimismo, se creó un Reglamento para regir el programa experimental.
Esta postura ha sido consecuente. Debemos utilizar los adelantos tecnológicos disponibles para cubrir los procedi-mientos judiciales. Sin embargo, la consecución de ese ob-jetivo no puede desembocar en la interrupción del proceso judicial ni el menoscabo de la sana administración de la justicia.
*837 Los peticionarios nos solicitan permiso para radiodifundir el caso Pueblo de Puerto Rico v. Pablo Casellas Toro, y señalan que solo necesitan conectarse con el sistema de micrófonos ya existente que opera en la propia sala del tribunal. Sin embargo, no podemos tomar en consideración únicamente a los medios de radiodifusión. De conceder la solicitud deberíamos poder extenderla también al resto de los medios de comunicación incluyendo los visuales. No obstante, el caso está muy adelantado en términos procesales. Por eso, no podemos acceder a lo solicitado. Adviértase que en ese caso ya culminó el proceso de desinsaculación del Jurado y el juicio está por comenzar. En términos de planificación y logística, la instalación del sistema audiovisual en la sala del Tribunal de Primera Instancia que va a atender ese juicio no se hace de un día para otro. También es necesario que los técnicos que operen el sistema de micrófonos y cámaras ausculten de antemano con el juez encargado del caso cuáles partes del proceso están autorizados a difundir. Por eso, es muy importante que los medios de prensa comprendan que las solicitudes hechas al amparo del Canon XV de Ética Judicial, 4 LPRA Ap. IV-B, deben tramitarse con tiempo de forma que se pueda planificar su implementación.
Así pues, acceder a lo que solicita la parte peticionaria en este caso significaría dilatar el comienzo del juicio contra el Sr. Pablo Casellas Toro ya que hay que tomar medidas que pueden tomar tiempo en implementarse. Así pues, es forzoso concluir que, en esta etapa de los procedimientos, la transmisión del juicio del señor Casellas Toro desembocaría en la interrupción indebida de los procesos judiciales.
Como mencioné en ASPRO et al., Ex parte I, supra, pág. 776, estoy comprometido con “abrir las puertas de la Rama Judicial para mantener informado al Pueblo de Puerto Rico sobre los procedimientos que se desarrollan en nues-tros tribunales”. No obstante, el trámite necesario para al- *838 canzar ese fin tiene que realizarse de manera organizada. La transmisión desorganizada de un juicio penal puede in-cidir sobre los derechos del acusado. Por eso, reglamentar su difusión a través de los medios audiovisuales es un asunto más complicado que difundir un acto de lectura de sentencia, como lo autorizamos en ASPRO et al., Ex parte I, supra. Ante el impacto que la difusión mediática puede tener sobre el juicio, lo ideal es que todo esto se reglamente en su día, si este Tribunal lo entiende necesario, mediante un protocolo que haga un balance entre la capacidad de mantener informado al público utilizando los nuevos méto-dos audiovisuales con el derecho del acusado y el interés social en que se conduzca un proceso penal justo e imparcial. Este no es el momento para improvisar.